UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

MATTHEW JOSEPH DOUGLAS,

*Petitioner,*

v.

No. CIV-24-74-JFH-DES

GERI WISNER,
MATTHEW J. HALL, and
LISA OTIPOBY-HERBERT,

*Respondents.*

## PETITIONER'S RESPONSE IN OPPOSITION TO RESPONDENTS' MOTION TO DISMISS

Oklahoma Attorney General Gentner Drummond submits to this Court Petitioner's Response in Opposition to Doc. 21, Respondents' Motion to Dismiss ("Mot").

Respondents' motion to dismiss crystalizes the legal issues for this Court and makes Petitioner's right to a writ of habeas corpus even clearer. Respondents' motion concedes the following:

1. "Absent congressional authorization, Indian Tribes ordinarily lack jurisdiction to prosecute non-Indians. *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 194, 212 (1978)." Mot. at 1.

2. Petitioner is a non-Indian and his prosecution relies upon jurisdiction contemplated by 25 U.S.C. § 1304. Mot. at 1–2.

3. Petitioner is "detained" for the purposes of analyzing his right to seek a writ of habeas corpus. Mot. at 4, 7.

4. Respondents seek to base Petitioner's prosecution on one of two "covered crimes,"[1] presumably in connection with allegations that "Petitioner forcefully placed his hands on," Mot. at 4, Muscogee (Creek) Nation ("MCN") Lighthorse Deputy Chief Dennis Northcross:

    a. Assault of tribal justice personnel in connection with Northcross's actions "preventing, detecting, investigating, making arrests relating to, making apprehensions for, or prosecuting a covered crime" pursuant to 25 U.S.C. § 1304(a)(1)(A). Mot. at 1–2, 5.

---

[1] Respondents also acknowledge that the underlying Arrestee's narcotics charges are state, not MCN, charges, Mot. at 3, and not a "covered crime" under 25 U.S.C. § 1304. Mot. at 1–2, 5.

      b.   Obstruction of justice pursuant to 25 U.S.C. § 1304(a)(9). Mot. at 2, 5.

5. This Court does not need to decide issues of disputed fact.[2] Mot. at 3.

6. The due process guarantees and related protections in the MCN code "mirror[]," Mot. at 2, and contain "many of the protections of the United States Constitution's Bill of Rights," Mot. at 12, but do not truly encompass the full panoply of Constitutional protections afforded defendants charged by state or federal prosecutors.[3]

7. Petitioner has now been arraigned, and the tribal case has been stayed but not dismissed. Mot. at 4.

The issues that remain in dispute are:

1. Whether MCN's sovereign immunity bars this action. Mot. at 6.

2. Whether Petitioner is required to exhaust his remedies with the MCN court. Mot. at 4–6, 7–11.

3. Whether Petitioner can seek relief immediately, as permitted by 25 U.S.C. § 1303, or is limited to waiting until he has been sentenced, as contemplated by 25 U.S.C. § 1304(f). Mot. at 5–6, 7–11.

As explained below, by explicitly permitting tribal detainees to seek a writ of habeas corpus, Congress has limited tribal sovereign immunity. Petitioner is not required to seek relief from a tribal court that does not have jurisdiction over him, and this Court should not require him to exhaust his remedies before that court. Exhaustion before a tribal court is only a matter of comity, and Petitioner

---

[2] The Court should not consider the facts set forth in the press release to which Respondents' motion cites. Mot. at 3–4. The Petitioner disputes the unsworn claim that he "threatened to lock the Lighthorse officers in the jail's receiving area if they did not take the suspect with them," the framing of the location where the underlying Arrestee was seated as a "secured area," and the framing of the location where Lighthorse Deputy Chief Dennis Northcross followed Petitioner as "out of the secured area." Mot. at 4. This Court need not decide these disputed facts, however, to grant the petition.

    Moreover, Petitioner did not—and does not—"acknowledge[] that the lack of a fully developed factual record in the MCN District Court limits his ability to substantiate his claims in this action." Mot. at 16. Instead, Petitioner, like Respondents, contends this Court can rule on the Petition without engaging in factfinding about issues that are likely to be disputed.

[3] *See* 25 U.S.C. § 1304(d)(4) (providing non-Indian defendants charged under 1304 with "all other rights whose protection is necessary under the Constitution of the United States in order for Congress to recognize and affirm the inherent power of the participating tribe to exercise special Tribal criminal jurisdiction over the defendant"); 14 MCN 1-303(K)(4), as set forth in https://www.creeksupremecourt.com/wp-content/uploads/NCA-22-113.pdf (providing "all other rights whose protection is necessary under the U.S. Constitution in order for Congress to recognize and affirm the inherent power of the Nation to exercise Special Tribal Criminal Jurisdiction over the defendant").

is not required to litigate before a tribunal that patently lacks jurisdiction over him. Relatedly, Petitioner is entitled to seek relief from this Court now pursuant to Section 1303. Limiting him the post-sentencing relief contemplated by Section 1304(f) would irrationally provide Indians with greater access to seek a writ in federal court at the earliest stage of tribal criminal proceedings while subjecting non-Indians to patently *ultra vires* tribal criminal proceedings until sentencing—and, as Respondents would have it, even the exhaustion of appeals.[4] Accordingly, the motion to dismiss should be denied and the petition should be granted.

### I.     Congress Has Authorized Habeas Corpus Relief Against Tribes

"Congress clearly has power to authorize civil actions against tribal officers, and has done so with respect to habeas corpus relief in § 1303 . . . ." *Santa Clara Pueblo v. Martinez*, 436 U.S. 49, 60 (1978); *see also Chegup v. Ute Indian Tribe*, 28 F.4th 1051, 1063 (10th Cir. 2022). The Respondents' arguments to the contrary, Mot. at 6, ignore Supreme Court rulings finding that tribal sovereignty "is subject to the superior and plenary control of Congress." *Santa Clara*, 436 U.S. at 58. As explained below, exhaustion requirements are prudential, not jurisdictional, and provide no additional ground for the tribe to assert sovereign immunity. *Chegup*, 28 F.4th at 1054, 1060.

Congress's decision to provide a route for Petitioner here is akin to—but even broader than—Congress's decision to provide a path for a state prisoner to seek a writ of habeas corpus pursuant to 28 U.S.C. §§ 2241 or 2254. While states typically enjoy sovereign immunity from suit, Section 2254, for example, provides that federal courts may "entertain an application" from a person in state custody "pursuant to the *judgment* of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a) (emphasis added). So, too, with 25 U.S.C. § 1303, which provides for an even broader review by federal courts, by offering a

---

[4] Mot. at 9–10 ("the MCN District *and Supreme Courts* stand ready to hear Petitioner's jurisdictional and other arguments" (emphasis added)).

forum to "test the legality of . . . detention by *order* of an Indian tribe." (emphasis added). Just as Oklahoma is not entitled to assert sovereign immunity to avoid federal court review sought by state defendants requesting writs of habeas corpus, the MCN cannot validly claim sovereign immunity requires dismissal of the petition.

>    II.   **Petitioner Is Not Required to Exhaust Remedies Before a Court That Patently Lacks Jurisdiction Over Him**
>       a.  **Exhaustion Before Tribal Courts is Prudential; Because the Tribal Court Does Not Have Jurisdiction, It Does Not Apply Here**

Exhausting tribal court remedies before seeking relief from a federal court is a non-jurisdictional "'prudential rule' based on comity." *Chegup*, 28 F.4th at 1054, 1060 (quoting *Strate v. A-1 Contractors*, 520 U.S. 438, 452 (1997)). Only when "a tribal forum has colorable jurisdiction" should federal courts consider requiring exhaustion in a tribal court. *Id.* at 1060. When it is clear that a tribal court lacks jurisdiction over a claim, parties need not first seek a ruling from that court before turning to federal courts for relief. *Norton v. Ute Indian Tribe*, 862 F.3d 1236, 1246 (10th Cir. 2017).

The Tenth Circuit's decision in *Norton*—a civil case where state non-Indian police officers brought an action seeking to halt the allegedly unlawful exercise of civil jurisdiction over them in a tribal court—provides an instructive exhaustion analysis. There, the court concluded a civil trespass claim the tribe brought against the police officers should be heard by the tribal court in the first instance, but considered the remaining claims without requiring exhaustion of potential tribal court remedies. *Id.* at 1246–47. In that case, the tribe alleged that state police officers physically prevented a tribal law enforcement officer from helping a tribal member who suffered a gunshot wound in connection with state law enforcement actions.[5] *Id.* at 1245–46. The conduct at issue took place on tribal lands, and the court concluded that the tribal court could "make a colorable claim" to having jurisdiction over the trespass claim, as trespass could mean the "political integrity" of the tribe was

---

[5] The parties disputed whether the gunshot wound was self-inflicted. *Norton*, 862 F.3d at 1242.

4

threatened by state law officers who "assert[ed] their own authority as superior to that of a tribal officer on tribal lands." *Id.* at 1246 (citing *Montana v. United States*, 455 U.S. 544, 566 (1981)). Because it was "plausible" that the tribal court possessed jurisdiction over the civil trespass claim, the court concluded it was appropriate for the tribal court to have an opportunity to consider whether that claim "may qualify as a critical undermining of the Tribe's ability to engage in self-government and territorial management." *Id.* at 1245–46.

The court, however, easily dispatched with any exhaustion requirement for the remaining claims in the complaint. *Id.* at 1246. The court concluded that even *civil* claims[6] of "false imprisonment, false arrest, assault and battery, wrongful death, spoliation of evidence, and conspiracy" that arose on tribal land "do not implicate the Tribe's core sovereign interest in excluding non-Indians from tribal lands, or any of the other tribal interests" recognized in *Montana*. *Id.* Because the tribe did "not set forth a theory under which [these] remaining claims are plausibly subject to a *Montana* exception . . . tribal exhaustion of those claims is not required." *Id.* at 1247.

Framed more broadly, exhaustion is not required if "tribal court jurisdiction is 'automatically foreclosed.'" *Norton*, 862 F.3d at 1243 (quoting *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 855 (1985)). Examples of that include: (1) tribal court action that is "patently violative of express jurisdictional prohibitions"; (2) "when it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by the main rule established in *Montana*"; and (3) when "it is otherwise clear that the tribal court lacks jurisdiction so that the exhaustion requirement would serve no other purpose than delay." *Id.* (quoting *Burrell v. Armijo*, 456 F.3d 1159, 1168 (10th Cir. 2006)).

---

[6] The Supreme Court has repeatedly explained that a tribe's jurisdiction over civil matters involving non-Indians is broader than its power to prosecute non-Indians. *See, e.g.*, *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 854–56 (1985) (applying *Oliphant* to the "question whether a tribal court has the power to exercise civil subject-matter jurisdiction over non-Indians" would "automatically foreclose" that jurisdiction. *Id.* at 855).

5

These examples of when federal courts require parties to first submit to the jurisdiction of a tribal forum reflect federal policies supporting tribal sovereignty: "(1) furthering congressional policy of supporting tribal self-government; (2) promoting the orderly administration of justice by allowing a full record to be developed in the tribal court; and (3) obtaining the benefit of tribal expertise if further review becomes necessary." *Norton*, 862 F.3d at 1243 (quoting *Kerr-McGee Corp. v. Farley*, 115 F.3d 1498, 1507 (10th Cir. 1997)).

Here, as explained in the petition, tribal court jurisdiction is clearly foreclosed as a matter of federal law. First, the prosecution is "patently violative of express jurisdictional prohibitions" because Section 1304 does not provide the MCN with the power to prosecute Petitioner. *Norton*, 862 F.3d at 1243. Second, the prosecution seeks to govern a non-Indian's conduct on tribal land in a manner clearly not covered by *Montana*. *Id.* Given that the Tenth Circuit found that the tribal court in *Norton* did not even have jurisdiction over a *civil* claim of assault and battery against a non-Indian police officer, *id.* at 1247, the MCN tribal court does not have jurisdiction to prosecute Petitioner. As the Supreme Court has made clear, tribes have more robust civil than criminal jurisdiction over non-Indians. *Nat'l Farmers Union*, 471 U.S. at 853–54.[7] Finally, as the tribal court lacks jurisdiction, requiring Petitioner to seek relief from it would "serve no other purpose than delay." *Norton*, 862 F.3d at 1243.

The underlying policy reasons for selective comity further explain why exhaustion is unnecessary. First, Congress has provided clear limits on the grant of authority to prosecute non-Indians, which the MCN has transgressed in this case. Second, there is no need for a fuller record to be developed before the tribal court, where Petitioner presumably has the right to require the MCN to prove him guilty beyond a reasonable doubt. 25 U.S.C. § 1304(d)(4); Mot. at 3 ("this motion does

---

[7] "If we were to apply the *Oliphant* rule here," which precludes tribes from prosecuting non-Indians absent explicit Congressional authority, "it is plain that any exhaustion requirement would be completely foreclosed because federal courts would always be the only forums for civil actions against non-Indians." *Nat'l Farmers Union*, 471 U.S. at 854.

not ask or require this Court to resolve any issues of fact"). Finally, the law at issue here—Section 1304 and caselaw addressing the scope of tribal powers granted by Congress—is federal and not tribal, so this Court (and not the MCN court) has the necessary expertise. *Accord Nat'l Farmers Union*, 471 U.S. at 852 (observing that the "extent to which Indian tribes have retained the power to regulate the affairs of non-Indians" is answered by "federal law"). Accordingly, exhaustion before the tribal court is not necessary in this case.

### b. Congress Contemplated That Non-Indian Defendants Charged in Tribal Court Under Section 1304 Would Still Have the Right to Seek a Writ Pursuant to Section 1303

Congress's choice to create a second path to seek a post-sentencing writ of habeas corpus for those prosecuted pursuant to Section 1304 does not limit Petitioner from seeking relief pursuant to Section 1303. Section 1304(e) clearly contemplates that non-Indians charged under 1304's powers still may file a Section 1303 writ. Section 1304(e) provides:

> (1) In general
>
> *A person who has filed a petition for a writ of habeas corpus in a court of the United States under section 1303* of this title may petition that court to stay further detention of that person by the participating tribe.
>
> (2) Grant of stay
>
> A court shall grant a stay described in paragraph (1) if the court—
>
> (A) finds that there is a substantial likelihood that the *habeas corpus petition will be granted*; and
>
> (B) after giving each alleged victim in the matter an opportunity to be heard, finds by clear and convincing evidence that under conditions imposed by the court, the petitioner is not likely to flee or pose a danger to any person or the community if released.

25 U.S.C. § 1304(e) (emphasis added).

Section 1304(e)(2)(A) thus makes it clear that (1) a non-Indian charged by a tribe may seek a writ pursuant to Section 1303, and (2) a federal court may grant that writ before the non-Indian is

convicted.[8] If Section 1304(f) was intended to provide the sole post-sentencing path for non-Indians to seek a federal-court writ, Section 1304(e) would be superfluous. *Astoria Fed. Sav. & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991) (holding that courts should "construe statutes, where possible, so as to avoid rendering superfluous any parts thereof" (citation omitted)). Moreover, the MCN clearly does not have jurisdiction to prosecute under Section 1304. Accordingly, limiting Douglas to the relief available in that statute would sanction an authority that does not exist. Respondents' reading has the perverse effect of erecting barriers only to non-Indians subjected to tribal-court jurisdiction under 1304, and not to Indians prosecuted without resort to this narrow Congressional grant of jurisdiction.

Section 1304(f)—which sets forth a post-sentencing path for a writ—provides an opportunity for defendants validly charged pursuant to "special Tribal criminal jurisdiction," 25 U.S.C. § 1304(a)(14), to enforce rights granted them under Section 1304. These defendants may seek Section 1304(f) relief if they believe a non-impartial jury considered the charges against them. *Id.* § 1304(d)(3) (guaranteeing "the right to a trial by an impartial jury that is drawn from sources that (A) reflect a fair cross section of the community; and (B) do not systematically exclude any distinctive group in the community, including non-Indians"). They could seek a writ pursuant to Section 1304(f) if they believed the rights afforded them by a tribal court were insufficient for Congress to "recognize and affirm the inherent power of the participating tribe to exercise special Tribal criminal jurisdiction over the defendant." *Id.* § 1304(d)(4). Section 1304(f) does not, however, preclude Petitioner from seeking a writ under Section 1303 where Respondents clearly lack jurisdiction over him.[9] *Accord id.* § 1304(g)

---

[8] As the MCN has elected to stay Petitioner's proceedings, Mot. at 4–5, Petitioner does not seek that relief from this Court.

[9] Federal courts require tribes to dismiss charges when the tribes do not have jurisdiction. *In re Garvais*, 402 F. Supp. 2d 1219, 1226 (E.D. Wash. 2004) (issuing "judgment granting the Petition For Writ of Habeas Corpus prohibiting the Spokane Tribal Court from prosecuting [petitioner] and directing that the Spokane Tribal Court dismiss the pending charges against and any restraints on [petitioner] flowing therefrom"); *Fife v. Moore*, No. CIV-11-133-RAW (E.D. Okla. Sept. 8, 2011) (order granting a Section 1303 petition and directing the MCN to "dismiss the pending indictment against the petitioners and to dissolve their release bond").

(requiring tribes to "timely notify in writing" all persons charged and detained "of their rights and privileges under this section *and* under section 1303 of this title" (emphasis added)).

While there is a dearth of caselaw interpreting Section 1304(f), as it was enacted in the fall of 2022, the analysis once again parallels that in Title 28 habeas corpus petitions. In the Tenth Circuit, a state pretrial detainee may seek a review of his pretrial detention pursuant to Section 2241, even though Section 2254 expressly permits him to attack only his *judgment*. *Walck v. Edmondson*, 472 F.3d 1227, 1235 (10th Cir. 2007) (collecting cases).[10] Likewise, Petitioner is permitted to proceed to seek review of the MCN's power to prosecute him under Section 1303, without being limited to the post-sentencing process contemplated by Section 1304(f)(1).

### c. Codification of Exhaustion Factors Does Not Make Them Jurisdictional

The codification in Section 1304(f) of exhaustion factors courts considered when addressing Section 1303 writs does not elevate those factors beyond their prudential status. Title 28 habeas corpus jurisprudence is once again instructive: federal courts concluded that the preexisting exhaustion doctrine subsequently codified in 28 U.S.C. § 2254(b) remained a rule of comity. *See, e.g.*, *Edwards v. Carpenter*, 529 U.S. 446, 451–52 (2000) ("[T]he principles of comity and federalism that underlie our longstanding exhaustion doctrine . . . —[are] now codified in the federal habeas statute, *see* 28 U.S.C. §§ 2254(b), (c) . . . ."); *Rose v. Lundy*, 455 U.S. 509, 515 (1982) ("The exhaustion doctrine existed long before its codification by Congress in 1948."). It is no different here.[11] *Accord Ysleta del Sur Pueblo v.*

---

[10] "We have on numerous prior occasions, in unpublished dispositions, noted that a state court defendant attacking his pretrial detention should bring a habeas petition pursuant to the general grant of habeas authority contained within 28 U.S.C. § 2241. . . . We agree and hold that § 2241 is the proper avenue by which to challenge pretrial detention . . . ." *Walck,* 472 F.3d at 1235.

[11] To be clear: exhaustion requirements in Title 28 are much stricter than those in Title 25—as they should be, because states presumptively have jurisdiction to prosecute any person who violates state law. State detainees "shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if [they have] the right under the law of the State to raise, by any available procedure, the question presented." 28 U.S.C. § 2254(c). Neither 25 U.S.C. § 1303 nor § 1304 contains this language.

*Texas*, 596 U.S. 685, 700 (2022) ("[W]hen Congress enacts statutes," it is presumed to be aware of the Supreme Court's "relevant precedents.").

### d. Cases Respondents Cite Do Not Support Requiring Petitioner to Exhaust His Remedies Before the Tribal Court

Respondents claim that several cases support requiring Petitioner to exhaust his remedies before the tribal court. They are wrong. All of these cases were *civil* cases—not criminal prosecutions. And in all of them, the tribal court had "colorable jurisdiction." *Chegup*, 28 F.4d at 1060, *Norton*, 862 F.3d at 1245–46.

First, Respondents cite *Norton*, which is analyzed above, to argue that the Tenth Circuit "fully supports Congress's determination that tribal courts are best suited to the task of determining their own jurisdiction in the first instance." Mot. at 10 n.6, 15. In *Norton*, the Circuit concluded that federal courts—not tribal courts—were the right forum to adjudicate even *civil* claims of assault and battery. *Norton*, 862 F.3d at 1246.

Second, Respondents cite *Nat'l Farmers Union* to argue that Petitioner must "submit his jurisdictional challenges to the tribal court in the first instance." Mot. at 14 (citing *Nat'l Farmers Union*, 471 U.S. at 856). In that case, the Supreme Court expressly crafted a different rule for *civil* cases than it had enunciated in *Oliphant*, which concluded that tribes had no power to prosecute non-Indians. *Id.* at 853–54 (citing *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191 (1978)). While "civil subject-matter jurisdiction over non-Indians" would be "automatically foreclosed" if *Oliphant* controlled, the Court concluded that "the existence and extent of a tribal court's [civil] jurisdiction" required a "careful examination of tribal sovereignty," among other things, which would benefit from the tribal court's analysis. *Id.* at 855.

Third, *Bank of Oklahoma v. Muscogee (Creek) Nation*, 972 F.2d 1166, 1169 (10th Cir. 1992), Mot. at 9, involved a contract dispute between the MCN and a bank, where the bank made vague allegations

10

of bad faith in an effort to seek immediate federal court review of a temporary restraining order ("TRO") entered by a tribal court. *Id.* at 1169. The bank "pointed to no 'express jurisdictional prohibition' which the TRO patently violated." *Id.* 1170. In requiring the bank to first exhaust its remedies before the tribal court, the Tenth Circuit contrasted "examples where tribal sovereignty is inconsistent" with "the overriding interests of the National Government," including when tribes "prosecute non-Indians in tribal courts which do not afford full Bill of Rights protection." *Id.* at 1169 (citing *Washington v. Confed. Tribes*, 447 U.S. 134, 153–54 (1980)).

Finally, it is irrelevant that the MCN Supreme Court once dismissed a criminal case where MCN prosecutors did not prove a defendant was an Indian.[12] Mot. at 8–9. In *Muscogee (Creek) Nation v. Stith*, SC 14-04 (MCN S. Ct. 2014), the MCN Supreme Court held that *tribal* law "controls any determination of personal jurisdiction as a component of Muscogee Nation criminal jurisdiction." *Id.* Here, however, the issue before this court is the reach of a *federal* statute—25 U.S.C. § 1304—not analysis of whether prosecution is appropriate under MCN law. There is no reason for this Court to ask the MCN Supreme Court to weigh in on pure questions of *federal* law, particularly in a clearly *ultra vires* prosecution where delay only subjects Petitioner to a longer deprivation of freedom.

### III. Respondents Did Not Identify a Separate Covered *Tribal* Crime That Served as a Predicate for Jurisdiction Over Petitioner

It is striking that the Respondents do not meaningfully address Petitioner's argument that a *separate*, underlying "covered crime" must have occurred, which crime was then either (1) being prevented, detected, investigated, etc. under 25 U.S.C. § 1304(a)(1)(A) or (2) the subject of efforts to obstruct justice by Petitioner under Section 1304(a)(9). Mot. at 1–2, 5. Nor could they, because there is no dispute between the parties that the entire incident on which Respondents base their authority

---

[12] While the one-page decision does not even recite the charges against the defendant, the case was brought before the 2022 amendments to Section 1304 and makes no reference to federal law.

11

to prosecute Petitioner happened during the same short period in the Okmulgee County Jail. Moreover, Respondents also concede they were exercising state—not tribal—law authority when they arrested a non-Indian on state narcotics charges and sought to remand him to the jail. Mot. at 3.

Congress clearly limits tribal jurisdiction to instances where an underlying *tribal* covered crime was hindered in some meaningful way by a non-Indian who either assaulted tribal justice personnel or obstructed justice in connection with that separate tribal crime. Otherwise, a tribe's jurisdiction over non-Indians would be vast indeed, and tribes would be permitted to charge non-Indians with assault of tribal justice personnel or obstruction of justice without limitation. Had Congress intended that result, it would have drafted much broader statutes. For example, Section 1304(a)(1) would have simply included the bolded language rather than the express limitations that follow:

> **The term "assault of Tribal justice personnel" means any violation of the criminal law of the Indian tribe that has jurisdiction over the Indian country where the violation occurs that involves the use, attempted use, or threatened use of physical force against an individual authorized to act for, or on behalf of, that Indian tribe or serving that Indian tribe** during, or because of, the performance or duties of that individual in—
>
> (A) preventing, detecting, investigating, making arrests relating to, making apprehensions for, or prosecuting a covered crime;
>
> (B) adjudicating, participating in the adjudication of, or supporting the adjudication of a covered crime;
>
> (C) detaining, providing supervision for, or providing services for persons charged with a covered crime; or
>
> (D) incarcerating, supervising, providing treatment for, providing rehabilitation services for, or providing reentry services for persons convicted of a covered crime.

25 U.S.C. § 1304(a)(1).

The lack of such express language establishes that Congress intended to limit tribal jurisdiction over non-Indians. The MCN has transgressed those limitations here.

### IV. This Court Should Grant Petitioner's Writ, Rather Than Requiring Him to Be Further Subjected to a Clearly *Ultra Vires* Prosecution

Respondents make no meaningful effort to address the cases in which courts concluded that non-Indians were entitled to challenge their prosecutions at the earliest stages of the proceedings. Pet. at 7; Mot. at 7 ("those cases did not arise under Section 1304(f)"). Instead, they argue that 1304(f) erects new barriers to habeas corpus—barriers that would apply only to *non-Indians* subjected to tribal court jurisdiction under Section 1304, and not to Indians prosecuted without resort to this narrow Congressional grant of jurisdiction.

As set forth above, that reading runs counter to settled law, including: (1) *Oliphant's* dictate that tribes presumptively lack jurisdiction to prosecute non-Indians, *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 212 (1978); (2) the Supreme Court's holding that tribal sovereignty is inconsistent with national interests when tribes seek to "prosecute non-Indians in tribal courts which do not afford full Bill of Rights protection," *Bank of Okla. v. Muscogee (Creek) Nation*, 972 F.2d 1166, 1169 (10th Cir. 1992) (citing *Washington v. Confed. Tribes*, 447 U.S. 134, 153–54 (1980)); *cf.* 25 U.S.C. § 1304(d)(4);[13] and (3) settled rules of statutory construction that make it clear that Petitioner may seek immediate relief under Section 1303.

### CONCLUSION

Respondents have not meaningfully addressed Petitioner's legal arguments regarding the MCN's clear lack of jurisdiction, and Petitioner is not required to submit to additional tribal court proceedings. Accordingly, this Court should deny Respondents' motion to dismiss, grant Petitioner's

---

[13] Section 1304(d)(4) requires a participating tribe that exercises special criminal jurisdiction over a non-Indian to provide "all other rights whose protection is necessary under the Constitution of the United States in order for Congress to recognize and affirm the inherent power of the participating tribe to exercise special Tribal criminal jurisdiction over the defendant." This rather undefined language is a far cry from the clear guarantees set forth in the Bill of Rights.

request for a writ of habeas corpus, dismiss the criminal complaint, dissolve Petitioner's release bond, issue injunctive relief against continued prosecution, and grant all other relief available under the law.

                                                  Respectfully submitted,

*s/ Gentner Drummond*
GENTNER DRUMMOND, OBA #16645
   *Attorney General*
AMIE N. ELY, OBA #35840
   *First Assistant Attorney General*
GARRY M. GASKINS, II, OBA #20212
   *Solicitor General*
OFFICE OF THE ATTORNEY GENERAL
STATE OF OKLAHOMA
313 NE 21st Street
Oklahoma City, OK 73105
(405) 521-3921
(405) 522-4534 (fax)
garry.gaskins@oag.ok.gov