UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

MATTHEW JOSEPH DOUGLAS,

    *Petitioner*,

v.

GERALDINE WISNER, MATTHEW
J. HALL, and LISA OTIPOBY-HERBERT,

    *Respondents*.

Case No. CIV-24-74-JFH-DES

**REPLY IN SUPPORT OF RESPONDENTS' MOTION TO DISMISS**

    In enacting § 1304, Congress plainly established the right of defendants prosecuted under the Special Tribal Criminal Jurisdiction ("STCJ") conferred by that section to seek habeas relief in federal court, along with the restrictions on their ability to do so. "After a defendant has been sentenced by a participating tribe, the defendant may file a petition for a writ of habeas corpus in a court of the United States under section 1303 of this title." 25 U.S.C. § 1304(f)(1). Such habeas relief "shall not be granted unless … the applicant has exhausted the remedies available in the Tribal court system[.]" *Id*. § 1304(f)(2)(A).

    Petitioner has not been sentenced by the Muscogee (Creek) Nation. Nor has he even attempted to exhaust the remedies available in the Nation's courts, including by raising the jurisdictional challenge that he presses here. Instead, Petitioner asks this Court to disregard Congress's sentencing and exhaustion requirements because the Nation "patently" lacks jurisdiction over his charges. Pet'r Br. 4. But while Petitioner may wish that this were the law, that is not "the statute Congress drafted." *Muldrow v. City of St. Louis*, 144 S. Ct. 967, 976 (2024). Petitioner's other argument—that Congress provided a separate pathway to pursue

habeas corpus relief at any time—likewise finds no support in the statutory text. Moreover, Petitioner has not shown that the jurisdiction of the Nation's courts over the alleged offense is "automatically foreclosed," Pet'r Br. 5 (citation omitted), and thus exhaustion is required even under his atextual formulation. The Petition accordingly should be dismissed or stayed, unless and until Petitioner is sentenced and has exhausted his remedies in the Nation's courts.

I.  **Petitioner's Attempts To Evade the Statutory Preconditions to Seeking Habeas Corpus Relief Are Without Merit, and this Court Should Reject Petitioner's Invitation To Rewrite the Statute.**

Congress expressly set forth the conditions under which an STCJ defendant may petition for and obtain habeas corpus under § 1303. First, the defendant may file a petition only "[a]fter a defendant has been sentenced by a participating tribe[.]" 25 U.S.C. § 1304(f)(1).[1] Second:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to an order of a Tribal court shall not be granted unless –
>
> (A) the applicant has exhausted the remedies available in the Tribal court system;
>
> (B) there is an absence of an available Tribal corrective process; or
>
> (C) circumstances exist that render the Tribal corrective process ineffective to protect the rights of the applicant.

*Id.* § 1304(f)(2). Petitioner does not argue that subsections (B) or (C) apply here, and his efforts to escape Congress's unambiguous exhaustion requirement fail.

Congress provided two specific circumstances in which an STCJ defendant is not required to exhaust the remedies available in the tribal court system. *See* 25 U.S.C.

---

[1] The Nation officials do not dispute that Congress authorized STCJ defendants to seek habeas relief in federal court. MCN Br. 6. However, this abrogation of tribal immunity carries with it explicit preconditions, which Petitioner has not met. *See Lac du Flambeau Band of Lake Superior Chippewa Indians v. Coughlin*, 599 U.S. 382, 387 (2023) ("[T]o abrogate sovereign immunity, Congress must make its intent unmistakably clear in the language of the statute." (quotation marks and ellipsis omitted)). Thus, Congress has not abrogated the Nation officials' immunity with respect to *this particular* habeas corpus action.

§ 1304(f)(2)(B)–(C). Petitioner, however, does not argue that "there is an absence of an available Tribal corrective process" in the Nation's criminal justice system or that "circumstances exist that render [this] process ineffective" to protect Petitioner's rights. *Id.* Instead, Petitioner asks the Court to craft an additional exception to the express statutory exhaustion requirement.

Petitioner borrows his desired exception—that exhaustion is required only where tribal court jurisdiction is "colorable" and not "automatically foreclosed," Pet'r Br. 4–5, 10—from a body of federal common law. But where Congress has spoken by statute, it is for Congress, not the courts, to create any additional limitations or exceptions within the comprehensive statutory scheme it has adopted. "When Congress provides exceptions in a statute, it does not follow that courts have authority to create others. The proper inference ... is that Congress considered the issue of exceptions and, in the end, limited the statute to the ones set forth." *Contreras-Bocanegra v. Holder*, 678 F.3d 811, 817 (10th Cir. 2012) (ellipsis in original) (quoting *United States v. Johnson*, 529 U.S. 53, 58 (2000)). In establishing an explicit exhaustion requirement and exceptions in § 1304(f), then, Congress is presumed to have "sa[id] … what it means and mean[t] … what it sa[id]," *Rotkiske v. Klemm*, 589 U.S. 8, 13–14 (2019) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)). Petitioner's suggestion that this Court instead revise the statute that Congress wrote in order to obtain Petitioner's preferred result should be roundly rejected. *See Hasan v. Chase Bank USA, N.A.*, 880 F.3d 1217, 1220 (10th Cir. 2018) ("We are not at liberty to rewrite the statute to reflect a meaning we deem more desirable." (quoting *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 (2008))).

Let there be no mistaking Petitioner's request. Petitioner asks the Court to arrogate to itself the power to create a sweeping new habeas corpus remedy that Congress did not see fit to write into the statute—namely, that an STCJ defendant may challenge in federal court the tribal

3

court's jurisdiction at any point in the proceedings, even before the defendant has presented a threshold jurisdictional challenge to the tribal court, as Petitioner seeks to do here. This would throw into disarray Congress' careful design to protect both the integrity of tribal court systems and the rights of tribal court defendants, and invite the sort of "'procedural nightmare,'" *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856 (1985), that the Supreme Court warns often results when federal courts intervene before the tribal courts are able to determine their own jurisdiction in the first instance.

II.     **Section 1303 Does Not Provide STCJ Defendants a Separate Pathway To Obtain Habeas Corpus Relief.**

    A.     **Section 1304(e) Does Not Provide a Means To Evade § 1304(f)'s Requirements.**

Petitioner contends that § 1303 provides STCJ defendants an independent basis to secure habeas relief, separate and apart from § 1304(f). Petitioner's argument rests on § 1304(e), which provides that an STCJ defendant "who has filed a petition for a writ of habeas corpus in a court of the United States under [25 U.S.C. §] 1303 … may petition that court to stay further detention of that person by the participating tribe." But while this provision confirms that an STCJ defendant may seek habeas relief under § 1303, it nowhere purports to eliminate the restrictions placed on seeking or obtaining such relief by § 1304(f). The statutory provisions must be read together, *see Territory of Guam v. United States*, 593 U.S. 310, 316 (2021) ("statutes must be read as a whole" (brackets and quotation marks omitted)), and here they exist harmoniously.

Petitioner is flatly incorrect in stating that § 1304(e) makes clear that "a federal court may grant [a habeas corpus] writ before the non-Indian is convicted," Pet'r Br. 7–8. Rather, § 1304(e) grants the federal courts the power *to stay* a petitioner's further detention pending the court's resolution of the merits of the habeas claims. Nothing about that stay authority conflicts with the

explicit preconditions imposed by § 1304(f)(1) on the filing of a habeas petition in the first instance, and by § 1304(f)(2) on the granting of that petition.

Nor does fidelity to the plain language of § 1304(f) render § 1304(e) superfluous, Pet'r Br. 8. For example, following conviction and sentencing, an STCJ defendant could file a petition for habeas corpus under § 1303, *see* § 1304(f)(1), and ask the federal court to stay detention by the tribe, § 1304(e). While the federal court could order the stay immediately and release the defendant from detention, § 1304(e), it could not grant the petition for habeas corpus in full until the defendant had exhausted tribal court remedies, § 1304(f)(2)(A).

Rather, it is Petitioner's position that introduces superfluity into the statute. Section 1304(f)(1)'s entire purpose is to allow STCJ defendants to invoke § 1303's habeas remedy, under specified conditions. If STCJ defendants may invoke § 1303 at any time, irrespective of § 1304(f)'s express limitations, § 1304(f)(1) would be a nullity.

### B. Sections 2254 and 2241 Do Not Support Petitioner's Attempt To Write § 1304(f) out of the Statute.

With the passage of § 1304, Congress enacted a comprehensive statutory package governing tribal nations' criminal jurisdiction over non-Indian defendants in Indian Country. Section 1304 establishes the crimes for which tribes can assert jurisdiction over non-Indians, § 1304(a)–(c); sets forth the procedural protections and due process rights that tribes must afford such defendants, § 1304(d); and authorizes these defendants to access § 1303's pre-existing habeas corpus remedy under the specific circumstances laid out in § 1304(f).

Petitioner argues that, by analogy, the relationship between 28 U.S.C. §§ 2254 and 2241 supports his ability to invoke § 1303 free of § 1304(f)'s constraints. Pet'r Br. 9. But that relationship is fundamentally different than the one existing between §§ 1304 and 1303. As the Tenth Circuit has explained, "§ 2241 is a vehicle for challenging pretrial detention, or for

attacking the execution of a sentence. A § 2254 petition, on the other hand, is the proper avenue for attacking the validity of a conviction and sentence." *Yellowbear v. Wyo. Att'y Gen.*, 525 F.3d 921, 924 (10th Cir. 2008) (citations omitted). These two habeas statutes thus operate independently of one another. Indeed, § 2254 makes no reference to § 2241.

Conversely, § 1303 constitutes the *sole vehicle* that Congress has provided for tribal court defendants to seek federal habeas relief. When Congress in 2022 amended § 1304 to provide for tribal jurisdiction over non-Indian defendants in limited circumstances, it chose to expressly limit the conditions under which an STCJ defendant may invoke § 1303. *See* 25 U.S.C. § 1304(f)(1) ("After a defendant has been sentenced by a participating tribe, the defendant may file a petition for a writ of habeas corpus … *under section 1303 of this title*." (emphasis added)). Thus, the statutory provisions do not operate independently. Petitioner's contention to the contrary ignores Congress's clear linkage between an STCJ defendant's ability to invoke § 1303 and his satisfaction of the requirements found in § 1304(f)(1). But no warrant exists for ignoring Congress's choice in this fashion.

### III. Petitioner's Analogy to the Exhaustion Requirements Under 28 U.S.C. § 2254 Undermines Rather than Supports His Position.

Petitioner suggests that habeas remedies available to state court defendants imply that he should not be required to present his jurisdictional challenge to the Nation's courts. Petitioner is incorrect. "A habeas petitioner is generally required to exhaust state remedies whether his action is brought under § 2241 or § 2254." *Montez v. McKinna*, 208 F.3d 862, 866 (10th Cir. 2000).

Section 2254's exhaustion requirement, as in § 1304(f), is explicit: "An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that ... the applicant has exhausted the remedies available in the courts of the State[.]" 28 U.S.C. § 2254(b)(1)(A). Regardless of the fact that this exhaustion

requirement traces its origins to principles of comity, Pet'r Br. 9–10, the federal courts have not understood themselves to enjoy a license to simply disregard Congress's directive as Petitioner suggests. Federal courts "will not consider a petitioner's claims for relief [under § 2254] that were not adequately presented to state courts." *Taylor v. Powell*, 7 F.4th 920, 926 (10th Cir. 2021); *see also, e.g.*, *Edwards v. Carpenter*, 529 U.S. 446, 452 (2000) (§ 2254 "require[s]" that constitutional claims "be first raised in State court"); *Eagle v. Bridges*, 674 F. Supp. 3d 1040, 1042 (E.D. Okla. 2023) (Heil, J.) ("The Court must dismiss a state prisoner's habeas petition if he has not exhausted the available state court remedies as to his federal claims.").[2]

The same principle holds true for § 1304. Congress's express exhaustion requirement is not magically transformed into prudential or advisory language because the exhaustion doctrine was originally one of comity. Judicial fidelity to § 2254's exhaustion language confirms that the opposite is true.

**IV.    Petitioner's Policy Arguments Should Be Directed to Congress.**

Petitioner complains that adherence to the plain language of § 1304(f) will disadvantage non-Indian STCJ defendants in comparison to Indian defendants charged with other crimes, as the latter may bring habeas petitions under § 1303, free of § 1304(f)'s limitations. Petitioner nowhere mentions the advantages that § 1304 confers on STCJ defendants compared to others subject to tribal prosecutions. *See*, *e.g.*, 25 U.S.C. § 1304(d)(3), (e), (g). More fundamentally, his complaint is "the result of the statute Congress drafted." *Muldrow*, 144 S. Ct. at 976. And as the Supreme Court has reiterated just this Term, the proper response is not for the courts to "add

---

[2] The rule under § 2241 is no different. While that section does not expressly require exhaustion, the courts have long held that defendants must exhaust their state court remedies before filing a petition under it, including when they challenge state court jurisdiction. *See*, *e.g.*, *Boumediene v. Bush*, 553 U.S. 723, 782 (2008) (§ 2241 petitioners "should exhaust adequate alternative remedies before filing for the writ in federal court") (citing *Ex parte Royall*, 117 U.S. 241, 251–252 (1886)); *Magar v. Parker*, 490 F.3d 816, 818 (10th Cir. 2007) (same).

7

words to the law to achieve what some … might think a desirable result." *Id*. (quotation marks omitted). Petitioner's argument is for Congress, which can amend the statute if it so chooses.

V. **Even if § 1304(f) Does Not Bar Petitioner's Application at This Time, He Would Still Be Required To Exhaust Tribal Court Remedies.**

Even if this Court were to determine that § 1303 authorizes Petitioner to bring a pre-conviction habeas petition unrestrained by § 1304(f)'s express limitations, Petitioner would still be required to exhaust his tribal court remedies. *See*, *e.g.*, *Chegup v. Ute Indian Tribe of Uintah and Ouray Reservation*, 28 F.4th 1051, 1061 (10th Cir. 2022) ("[W]e apply the tribal exhaustion rule to § 1303 petitions[.]" (quotation marks omitted)). Petitioner concedes that the exhaustion policy applies, but contends that it should be excused here because the Nation's jurisdiction over him is "automatically foreclosed." Pet'r Br. 5 (quotation marks omitted). Petitioner borrows this exception from the common-law test that has arisen out of federal court challenges to tribal jurisdiction in civil matters as well as § 1303 actions predating Congress's passage of § 1304(f). *See Nat'l Farmers*, 471 U.S. at 855 (requiring exhaustion where tribal court's civil jurisdiction over non-Indian defendant was "not automatically foreclosed"); *see also Chegup*, 28 F.4th at 1060 (comity and the federal policy of promoting tribal self-government require exhaustion wherever "a tribal forum has colorable jurisdiction") (quoting Restatement of the Law of Am. Indians § 59 cmt. a (Am. Law Inst. Proposed Final Draft 2021)).

As a threshold matter, substantial and material factual questions surrounding the alleged offense make exhaustion here particularly appropriate. For example, Petitioner disputes that he threatened to lock the Nation's Lighthorse officers in the jail's receiving area and disputes the secured nature of the area where the alleged offense occurred. Pet'r Br. 2 n.2. Petitioner insists that this Court ignore these material factual allegations. *Id*. ("The Court should not consider the facts set forth in the press release to which Respondents' motion cites."). But these are the very

allegations that the Nation's Prosecutor will seek to prove up at trial and, if sustained by the trier of fact, use to substantiate the Nation's jurisdiction under § 1304. Where disputes of fact are relevant to the question of tribal jurisdiction, a key purpose of the exhaustion doctrine is to allow "a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed." *Nat'l Farmers*, 471 U.S. at 856; *see also Thlopthlocco Tribal Town v. Stidham*, 762 F.3d 1226, 1237 (10th Cir. 2014) (exhaustion ensures that "federal courts will have the benefit of a full factual record on the relevant issues"). Likewise, exhaustion is necessary to allow tribal courts to address questions of tribal law, including whether the Nation has jurisdiction over Petitioner under tribal law, whether his alleged conduct satisfies the elements of the tribal offense, and the merits of any defenses that Petitioner may raise in opposition to his prosecution. Whether the facts ultimately proven at trial will implicate additional tribal offenses—for instance, "[p]revent[ing] or attempt[ing] to prevent performance of official acts," "[o]bstructing an officer in the performance of duties," or "false imprisonment," *see* MCN Code tit. 14, §§ 2-311, 2-318, 2-803, 2-819[3]—are all questions that the Nation's courts must answer in the first instance.

And the Nation's jurisdiction over the alleged offense is not automatically foreclosed. In enacting § 1304, Congress expressly recognized that tribal criminal jurisdiction over non-Indians extends to the crimes of "assault of Tribal justice personnel" and "obstruction of justice," 25 U.S.C. § 1304(a)(5). "Assault of Tribal justice personnel" charges can be sustained if Petitioner committed any violation "of the criminal law of the [Nation] … that involves the use, attempted use, or threatened use of physical force against [a tribal law enforcement officer] … during, or because of, the performance of duties of that individual in … preventing, detecting, [or]

---

[3] https://www.creeksupremecourt.com/wp-content/uploads/title14.pdf.

9

investigating … a covered crime[.]" *Id*. § 1304(a)(1). "Obstruction of justice" charges are proper if the Petitioner committed "any violation of the criminal law of the [Nation] … that involves interfering with the administration or due process of the laws of the Indian tribe, including any Tribal criminal proceeding or investigation of a crime." *Id.* § 1304(a)(9).

The proper measuring stick for tribal court jurisdiction in this case is the statute Congress enacted expressly affirming the Nation's criminal jurisdiction over non-Indians under circumstances closely implicated by the facts at issue here, along with "the criminal law of the [Nation]." In the face of § 1304(a), cases pre-dating the enactment of § 1304, including *Oliphant v. Suquamish Tribe*, 435 U.S. 191 (1978), which found tribal criminal jurisdiction over non-Indians not to exist under federal common law, and *Norton v. Ute Indian Tribe of the Uintah and Ouray Reservation*, 862 F.3d 1236 (10th Cir. 2017), which similarly addressed the scope of a tribal court's civil jurisdiction under the federal common law, are simply irrelevant. Petitioner's repeated invocation of those common-law cases only underscores the lack of support for his position under the statute that is in fact at issue. While Petitioner takes issue with the results, Congress has passed a statute defining the contours of Special Tribal Criminal Jurisdiction over non-Indians, and that statute controls the analysis here.

Petitioner has not and cannot establish that the Nation's jurisdiction under § 1304 is automatically foreclosed in this case. Accordingly, even if Petitioner could pursue habeas relief before he has been convicted and sentenced, exhaustion is required. Petitioner must raise his jurisdictional challenge in the Nation's courts in the first instance.

## CONCLUSION

For the foregoing reasons, the Nation officials respectfully request that the Court dismiss this matter without prejudice or, in the alternative, stay these proceedings pending the Petitioner's exhaustion of his remedies in the Nation's courts.

Dated: June 7, 2024            Respectfully submitted,

*/s/ Philip H. Tinker*
Riyaz A. Kanji
David A. Giampetroni
Philip H. Tinker
KANJI & KATZEN, P.L.L.C.
P.O. Box 3971
Ann Arbor, MI 48106
(734) 769-5400
rkanji@kanjikatzen.com
dgiampetroni@kanjikatzen.com
ptinker@kanjikatzen.com

Stephanie R. Rush, OBA No. 34017
KANJI & KATZEN, P.L.L.C.
P.O. Box 2579
Sapulpa, OK 74067
(206) 486-8211
vrush@kanjikatzen.com

*Counsel for Respondents*

## CERTIFICATE OF SERVICE

I certify that on June 7, 2024, I electronically transmitted the above and foregoing document to the Clerk of the United States District Court for the Eastern District of Oklahoma using the ECF System for filing and transmittal of a Notice of Electronic Filing to:

Gentner Drummond, Attorney General,
   OFFICE OF THE ATTORNEY GENERAL, STATE OF OKLAHOMA

Amie Ely, First Assistant Attorney General,
   OFFICE OF THE ATTORNEY GENERAL, STATE OF OKLAHOMA

Garry M. Gaskins, II, Solicitor General
   OFFICE OF THE ATTORNEY GENERAL, STATE OF OKLAHOMA

Kyle Peppler, Assistant Solicitor General
   OFFICE OF THE ATTORNEY GENERAL, STATE OF OKLAHOMA

/s/ *Philip H. Tinker*