IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MATTHEW JOSEPH DOUGLAS, | ) |
| Petitioner, | ) ) ) |
| v. | ) Case No. 24-CV-74-DES ) |
| GERI WISNER, MATTHEW J. HALL, and LISA OTIPOBY-HERBERT, | ) ) ) ) |
| Respondents. | ) ) |

**REPORT AND RECOMMENDATION**

This matter comes before the Court on Respondents, Muscogee (Creek) Nation Attorney General Geraldine Wisner and Prosecutor Matthew Hall's ("Respondents") Motion to Dismiss Petitioner's Complaint pursuant to Fed. R. Civ. P. 12(b)(1) and (6). (Docket No. 21). On February 28, 2024, United States District Judge John F. Heil, III referred this case to Magistrate Judge D. Edward Snow for all pretrial and discovery matters, including dispositive motions, pursuant to 28 U.S.C. § 636. (Docket No. 6). For the reasons set forth below, the undersigned Magistrate Judge RECOMMENDS Respondents' Motion to Dismiss be DENIED.

**I.     Background**

Petitioner's Writ of Habeus Corpus alleges that on December 18, 2023, three Muscogee (Creek) Nation ("MCN") Lighthorse officers brought an arrestee to the Okmulgee County Criminal Justice Authority Jail (the "Jail") on charges of possessing a controlled dangerous substance within 1,000 feet of a school and possessing drug paraphernalia. (Docket No. 4 at 4). Petitioner is a detention sergeant for the Jail, and a non-Indian. *Id.* at 1. Upon arriving at the Jail, an altercation occurred between members of the MCN Lighthorse and jail staff. *Id.* Respondents allege that this altercation arose out of County officials' refusal to accept custody of the arrestee.

1

(Docket No. 21 at 8). The dispute escalated, and the MCN alleges that Petitioner forcefully placed his hands on the Lighthorse Deputy Chief. *Id.* at 9. The Petitioner continues that shortly after this incident, Petitioner accepted custody of the arrestee at the instruction of the Okmulgee County district attorney. (Docket No. 4 at 4). On December 20, 2023, Petitioner was charged with "protected status battery on law enforcement," under 14 MCN §2-303(B)(1). *Id.* at 5. On December 21, 2023, Petitioner attended a virtual hearing that Respondent Judge Lisa Otipoby-Herbert presided over, with Respondent Matthew J. Hall acting as prosecutor representing the MCN. *Id.* The Judge recalled the arrest warrant and ordered that Petitioner be released on his own recognizance pending an arraignment scheduled for January 17, 2024. *Id.* Thereafter, Petitioner retained counsel, who reset the arraignment to March 27, 2024. *Id.* On February 28, 2024, Petitioner filed a Petition for Writ of Habeas Corpus under 25 U.S.C. §1303, alleging that the MCN lacks jurisdiction to prosecute the pending criminal charges against him, and requesting dismissal of the complaint, dissolution of his release bond, and injunctive relief against continued prosecution. *Id.* at 13-14.

On April 30, 2024, Respondents filed their Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6), arguing Petitioner's habeas petition is premature under 25 U.S.C. § 1304(f)(1) because Petitioner has not "been sentenced by a participating tribe [i.e., the Nation]" and under 25 U.S.C. § 1304(f)(2)(A) because he has not "exhausted the remedies available in the Tribal court system" to challenge his prosecution. (Docket No. 21 at 6).

II.     Analysis

Under Fed. R. Civ. P. 12(b)(1) a party may assert a defense to a complaint for lack of subject-matter jurisdiction. There are two types of Rule 12(b)(1) motions, (1) those which attack the complaint on its face, and (2) those which attack the existence of subject matter jurisdiction in

fact, quite apart from any pleading. See *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). When there is an attack of the complaint on its face, a district court's review is similar to a Rule 12(b)(6) motion in that "a district court must accept the allegations in the complaint as true." *Id*. at 1002. However, for a Rule 12(b)(1) motion attacking the facts upon which subject matter jurisdiction exists, "a district court may not presume the truthfulness of the complaint's factual allegations." *Id*. at 1003. Accordingly, unlike a Rule 12(b)(6) motion, consideration of a Rule 12(b)(1) jurisdiction-type motion need not be limited since "a court has wide discretion to allow affidavits, other documents, and a limited evidentiary hearing to resolve disputed jurisdictional facts." *Id*. Under this authority, the undersigned Magistrate Judge looks at the Pleadings presented along with all attached exhibits. Respondent's Motion to Dismiss is a factual attack on this Court's jurisdiction over Petitioner's Writ, because Respondents allege Petitioner has not satisfied the jurisdictional prerequisites of 25 U.S.C. § 1304(f).

Respondents' Motion to Dismiss argues that the Petitioner's ability to request a Writ of Habeas Corpus is bound by the limitations contained in 25 U.S.C. § 1304(f). (Docket No. 21 at 6). 25 U.S.C. § 1304(f) states:

> (1) In general. After a defendant has been sentenced by a participating tribe, the defendant may file a petition for a writ of habeas corpus in a court of the United States under section 1303 of this title.
>
> (2) Requirement. An application for a writ of habeas corpus on behalf of a person in custody pursuant to an order of a Tribal court shall not be granted unless —
>
>   (A) the applicant has exhausted the remedies available in the Tribal court system;
>
>   (B) there is an absence of an available Tribal corrective process; or
>
>   (C) circumstances exist that render the Tribal corrective process ineffective to protect the rights of the applicant.

25 U.S.C. §1304(f).

Respondents argue that Petitioner's failure to exhaust tribal remedies as prescribed by 25 U.S.C. § 1304(f)(2)(A) provides sufficient cause to dismiss until such exhaustion has occurred. (Docket No. 21 at 12). As noted above, 25 U.S.C. §1304(f)(1) permits the filing of a writ of habeas corpus "[a]fter a defendant has been sentenced by a participating tribe…[,]" which Respondents argue imposes a limitation on Petitioner's ability to overcome the subsequent exhaustion requirements outlined in 25 U.S.C. §1304(f)(2). *Id.* This argument, however, ignores the fact that Petitioner filed his Petition under 25 U.S.C. § 1303, which specifically allows for a writ of habeas corpus to test the legality of any person's detention by order of an Indian tribe. 25 U.S.C. § 1303 ("The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe."). In his Response, Petitioner argues the applicability of 25 U.S.C. § 1304(f) is a "post-sentencing path," rather than a limitation on a non-Indian's ability to seek a pre-sentencing writ under § 1303. (Docket No. 25 at 8). The undersigned Magistrate Judge agrees.

Respondents err by attempting to apply 25 U.S.C. § 1304(f) in a manner that diminishes § 1304(e). *Id.* at 7. 25 U.S.C. § 1304(f) applies "after a defendant has been sentenced," while § 1304(e) permits a habeas corpus petition to prevent further detention under § 1303 without any such prerequisite. *See* 25 U.S.C. § 1304(e) ("A person who has filed a petition for a writ of habeas corpus in a court of the United States under section 1303 of this title may petition that court to stay further detention of that person by the participating tribe."). Case law permits federal courts to consider 25 U.S.C. § 1303 writs of habeas corpus brought by petitioners who had been "released on their own recognizance [by tribal authorities] pending trial," *Dry v. CFR Ct. of Indian Offenses for Choctaw Nation,* 168 F.3d 1207, 1208-09 n.1 (10th Cir. 1999). Furthermore, the Tenth Circuit has recognized several exceptions to the tribal exhaustion requirement as laid out in *Norton v. Ute*

*Indian Tribe of the Uintah & Ouray Rsrv.,* 862 F.3d 1236, 1243 (10th Cir. 2017)). In *Norton*, the Tenth Circuit specifically noted the following exceptions:

> (1) where an assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith; (2) where the tribal court action is patently violative of express jurisdictional prohibitions; (3) where exhaustion would be futile because of the lack of an adequate opportunity to challenge the tribal court's jurisdiction; (4) when it is plain that no federal grant provides for tribal governance of nonmembers' conduct on land covered by the main rule established in *Montana v. United States*, 450 U.S. 544 (1981); or (5) it is otherwise clear that the tribal court lacks jurisdiction so that the exhaustion requirement would serve no purpose other than delay.

*Norton,* 862 F.3d at 1243, *citing Burrell v. Armijo*, 456 F.3d 1159, 1168 (10th Cir. 2006) (quotations, alterations, and citations omitted). Exceptions are applied narrowly and typically will not apply so long as tribal courts can "make a colorable claim that they have jurisdiction." *Thlopthlocco Tribal Town v. Stidham*, 762 F.3d 1226, 1239 (10th Cir. 2014).

Here, Petitioner argues that the tribal court's claims are "patently violative of express jurisdictional prohibitions." (Docket No. 25 at 6). For this express jurisdictional prohibition, Petitioner relies on the court's decision in *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 212 (1978), which holds that without congressional authorization, Indian tribes ordinarily lack jurisdiction to prosecute non-Indians.[1] Petitioner also argues that "Section 1304 does not provide the MCN with the power to prosecute Petitioner[,]" because the alleged violations of the covered crimes of "assault of Tribal Justice Personnel" and "obstruction of justice" referenced in 25 U.S.C.

---

[1] *Oliphant*, is superseded by statute on other grounds as stated in *United States v. Lara*, 541 U.S. 193, 205, 207 (2004); *United States v. Cooley*, 593 U.S. 345, 349–50 (2021). Even those who argue tribes' criminal jurisdiction should be expanded acknowledge *Oliphant* remains good law: its "holding that tribes lost criminal jurisdiction over non-Indians has never been squarely rejected by Congress and so continues to function as a clear rule limiting tribal power." Addie C. Rolnick, Recentering Tribal Criminal Jurisdiction, 63 UCLA L. R EV . 1638, 1660–61 (2016).

§§ 1304(a)(5)(a), (a)(5)(e) are clearly limited to instances where an underlying tribal crime occurred. (Docket No. 25 at 6, 12).

The parties do not dispute that the entire incident for which Petitioner is being prosecuted happened during the short period at the Okmulgee County Jail, while Respondents were exercising state, rather than tribal, law authority surrounding the arrest of a non-Indian on state narcotic charges. (Docket No. 21 at 3 and Docket No. 25 at 11-12). Petitioner's Writ focuses on his argument that the MCN lacks jurisdiction over him because: 1) as a general rule, tribes "lack inherent sovereign power to exercise criminal jurisdiction over non-Indians[,]" *United States v. Cooley*, 593 U.S. 345, 349–50 (2021) (citing *Oliphant*, 435 U.S. at 212); and 2) Congress' grant of limited jurisdiction only extends to "covered crimes," none of which were committed before Petitioner was charged. (Docket No. 4 at 10).

Since Petitioner's Writ is based on MCN's lack of jurisdiction to prosecute him, the undersigned Magistrate Judge agrees Petitioner is not required to submit to additional tribal court proceedings. *See Texaco, Inc. v. Hale*, 81 F.3d 934, 936 n. 2 (10th Cir.1996) (quoting *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856 n. 21 (1985) (indicating that District courts should abstain from exercising federal question jurisdiction until tribal remedies have been exhausted "unless the 'assertion of tribal jurisdiction is motivated by a desire to harass or is conducted in bad faith, or where the action is patently violative of express jurisdictional prohibitions, or where exhaustion would be futile because of the lack of an adequate opportunity to challenge the court's jurisdiction"); *In re Garvais*, 402 F. Supp. 2d 1219, 1220 (E.D. Wash. 2004)("Previously, this court has ruled that pursuant to 25 U.S.C. § 1303, which states that 'The privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by Order of an Indian tribe," does not require [Petitioner]

6

to first exhaust his challenges in tribal court before seeking habeas relief in this court."). Accordingly, the undersigned Magistrate Judge RECOMMENDS Respondents' Motion to Dismiss Petitioner's Writ as premature be DISMISSED.

### III.     Conclusion

Based on the foregoing analysis, the undersigned Magistrate Judge concludes that Petitioner's Writ of Habeas Corpus under 25 U.S.C. § 1303 is not premature, as Petitioner challenges the Muscogee (Creek) Nation's jurisdiction to prosecute a non-Indian for conduct arising solely within a state-operated facility and under state authority. Respondents' reliance on 25 U.S.C. § 1304(f) is misplaced, as it applies only post-sentencing and does not preclude pre-sentencing habeas review under § 1303. Moreover, given the credible claim that the tribal court's assertion of jurisdiction is patently violative of express jurisdictional prohibitions under *Oliphant* and its progeny, Petitioner is not required to exhaust tribal remedies prior to seeking relief. Accordingly, the undersigned RECOMMENDS that Respondents' Motion to Dismiss be DENIED.

Any objections to this Report and Recommendation must be filed within fourteen days. *See* 18 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). Any objections and response shall each be limited to 10 pages and a reply is permitted only with leave of court upon a showing of good cause.

DATED this 1st day of October, 2025.

_____
D. Edward Snow
United States Magistrate Judge