# UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

MATTHEW JOSEPH DOUGLAS,

         *Petitioner*,

v.

GERALDINE WISNER, MATTHEW
J. HALL, and LISA OTIPOBY-HERBERT,

         *Respondents*.

Case No. CIV-24-74-JFH-DES

**OBJECTIONS OF RESPONDENTS MUSCOGEE (CREEK) NATION
ATTORNEY GENERAL GERALDINE WISNER AND PROSECUTOR MATTHEW
HALL TO REPORT AND RECOMMENDATION AND BRIEF IN SUPPORT**

**INTRODUCTION**

Pursuant to Fed. R. Civ. P. 72(b) and 18 U.S.C. § 636(b)(1)(C), Respondents Geraldine Wisner, Attorney General of the Muscogee (Creek) Nation ("Nation" or "MCN"), and Matthew Hall, the Nation's prosecutor (collectively, "Nation Officials"), object to the October 1, 2025 Report and Recommendation (R&R) of U.S. Magistrate Judge D. Edward Snow, Dkt. 34. The R&R misinterprets the habeas corpus remedy available to defendants under 25 U.S.C. § 1304 in two critical respects. First, it misconstrues the scheme carefully crafted by Congress to protect the rights of non-Indian defendants by creating a new habeas remedy that Congress has nowhere seen fit to provide. Second, it forges a new exception to the tribal court exhaustion rule that would swallow the rule entirely. Accordingly, the Nation Officials respectfully request that the Court reject the R&R and dismiss this action without prejudice or, in the alternative, stay the action until the statutory requirements for seeking habeas relief have been satisfied.

**BACKGROUND**

On December 20, 2023, the Nation charged Mr. Douglas with "protected status battery on law enforcement," under 14 MCN § 2-303(B)(1) and 25 U.S.C. § 1304. The latter statute authorizes the Nation to exercise criminal jurisdiction over non-Indian defendants with respect to specific crimes, *see* 25 U.S.C. § 1304(a)–(c), including Mr. Douglas's alleged assault of an MCN Lighthorse Deputy, *see infra* pp. 7–8 (discussing crimes alleged). After making an initial appearance in the MCN Court and being released on his own recognizance, Mr. Douglas filed a petition for habeas corpus in this Court on February 28, 2024, alleging the Nation lacks jurisdiction to prosecute the criminal charges pending against him. See Dkt. 34 at 2. Mr. Douglas has not presented his jurisdictional objections to the MCN Court, and he has not been tried, convicted, or sentenced by that court. On April 30, 2024, the Nation Officials moved to dismiss

1

Mr. Douglas's petition pursuant to Fed. R. Civ. P. 12(b)(1) and (6). On October 1, 2025, Magistrate Judge Snow recommended that this Court deny the motion. *See* Dkt. 34. The Nation Officials now request that the Court reject the R&R and dismiss the petition. This Court reviews the R&R de novo. *See* Fed. R. Civ. P. 72(b)(3); 18 U.S.C. § 636(b)(1)(C).

## ARGUMENT

I.  **Congress Has Plainly Provided That a Section 1304 Defendant May Only File a Habeas Corpus Petition After Being Sentenced by an Indian Tribe.**

In 1978, the Supreme Court held that Indian tribes lack jurisdiction to prosecute non-Indians absent congressional authorization. *See Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 212 (1978). In 2022, Congress provided such authorization when it granted participating tribes authority to exercise "special Tribal criminal jurisdiction" (STCJ) over non-Indians for specifically enumerated "covered crimes." *See* 25 U.S.C. § 1304(a)–(c). It also established the right of STCJ defendants prosecuted under § 1304 to seek habeas corpus relief in federal court, subject to certain conditions. *See* 25 U.S.C. § 1304(f). Section 1304(f)(1) thus provides: "*After a defendant has been sentenced by a participating tribe*, the defendant may file a petition for a writ of habeas corpus in a court of the United States under section 1303 of this title."[1] 25 U.S.C. § 1304(f)(1) (emphasis added). Such habeas relief, moreover, "shall not be granted unless … *the applicant has exhausted the remedies available in the Tribal court system*[.]" *Id*. § 1304(f)(2)(A) (emphasis added). Congress accordingly authorized § 1304 defendants to access § 1303's pre-existing habeas corpus remedy, but subject to specific requirements. The threshold requirement—that a petition may be filed only "after" sentencing—is dispositive here.

---

[1] Section 1303 was enacted as part of the 1968 Indian Civil Rights Act and provides that "[t]he privilege of the writ of habeas corpus shall be available to any person, in a court of the United States, to test the legality of his detention by order of an Indian tribe." 25 U.S.C. § 1303.

The R&R errs by failing to treat the plain language of § 1304(f)(1) as a condition on the availability of habeas corpus relief to STCJ defendants under § 1303.[2] Instead, the R&R misreads 25 U.S.C. § 1303 and § 1304(f) as creating separate and independent pathways for an STCJ defendant to petition for a writ of habeas corpus—a "pre-sentencing path" under § 1303 and a "post-sentencing" path under § 1304(f). *See* Dkt. 34 at 4. This reading creates a sweeping new habeas corpus remedy for § 1304 defendants that Congress did not write into the statute—the ability to challenge tribal jurisdiction in federal court *at any time*.

The purported textual basis for the R&R's construction does not withstand scrutiny. The R&R waves off the clear conditions imposed by the plain language of § 1304(f) as being of no moment because Mr. Douglas filed his petition under § 1303. Dkt. 34 at 4 ("This argument [under 25 U.S.C. § 1304(f)], however, ignores the fact that Petitioner filed his petition under 25 U.S.C. § 1303, which specifically allows for a writ of habeas corpus to test the legality of any person's detention by order of an Indian tribe."). But the distinction the R&R attempts to draw between § 1303 and § 1304 petitions does not exist. A habeas petition filed by a § 1304 defendant *is*, in Congress's own words, "a petition for a writ of habeas corpus … *under section 1303*[,]" 25 U.S.C. § 1304(f)(1) (emphasis added). That is, while § 1303 supplies a general right of habeas corpus review to persons detained by Indian tribes, § 1304 sets forth the specific requirements for STCJ defendants to avail themselves of that right.

"It is a well established canon of statutory interpretation ... that the specific governs the general," *United States v. Miller*, 978 F.3d 746, 760 (10th Cir. 2020) (quoting *RadLAX Gateway*

---

[2] The R&R treats § 1304(f)(1) as merely descriptive of when a petition is filed, as if Congress had written: "If a defendant files a petition for a writ of habeas corpus after he or she has been sentenced by a participating tribe," then the writ may be granted only if the requirements of § 1304(f)(2) have been satisfied. But that construction defies the plain text, which expressly conditions when an STCJ defendant "may file*"* a petition.

3

*Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639, 645 (2012) (quotation marks omitted)). The R&R errs in ignoring the clearly delineated conditions that Congress chose to impose on an STCJ defendant's ability to seek federal habeas relief. *See Preiser v. Rodriguez*, 411 U.S. 475, 489–90 (1973) (rejecting attempt to use general statute to evade condition precedent for habeas corpus relief contained in more specific statute). The R&R effectively treats those conditions as optional, but the Tenth Circuit and this Court are appropriately loathe to take such an approach to statutory construction. *See*, *e.g.*, *Hasan v. Chase Bank USA, N.A.*, 880 F.3d 1217, 1220 (10th Cir. 2018) (federal courts "are not at liberty to rewrite the statute to reflect a meaning [they] deem more desirable" (quoting *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 (2008))); *United States v. Cole*, 2022 WL 17987066, at *3 (E.D. Okla. Dec. 29, 2022) (Heil, J.) ("It is our primary task in interpreting statutes to determine congressional intent, using traditional tools of statutory construction[.] In so doing, we will assume that Congress's intent is expressed correctly in the ordinary meaning of the words it employs." (internal marks omitted)).

The R&R seeks to bolster its construction by arguing that the Nation Officials "apply 25 U.S.C. § 1304(f) in a manner that diminishes § 1304(e)," Dkt. 34 at 4, and it construes the latter provision as "permit[ting] a habeas corpus petition to prevent further detention under § 1303" at any time, *id.* This is incorrect. Section 1304(e) provides that "[a] person who has filed a petition for a writ of habeas corpus … under section 1303 … may petition [the federal] court to stay further detention of that person by the participating tribe." 25 U.S.C. § 1304(e)(1). This provision does not by itself permit or authorize the filing of a habeas corpus petition. Rather, it authorizes a federal court to *grant a particular form of relief* (a stay of further detention pending final resolution of the petition) after a person "*has filed*" a petition under § 1303, *id.* (emphasis added). Nothing about this stay authorization alters or eliminates the restrictions that § 1304(f)

4

places on the ability of an STCJ defendant to file a petition under section 1303 in the first instance. Such a filing can only take place "[a]fter a defendant has been sentenced by a participating tribe …," *id*. § 1304(f)(1). Section 1304(e) nowhere purports to write that condition out of § 1304(f), and it is undisputed Mr. Douglas has not met that condition here.

Both subsections (e) and (f) of section 1304 refer to a habeas corpus petition filed "under section 1303." Under the R&R's construction, a petition that *has been filed* "under section 1303" (for purposes of § 1304(e)) is a different animal than a petition that *may be filed* "under section 1303" (for purposes of § 1304(f)). No text supports this illogical construction, and the R&R's suggestion that "under section 1303" means something different in subsection (e) than it does in subsection (f) violates the bedrock rule of statutory construction that the same term should not be given two different meanings in the same statute. *See, e.g.*, *In re Woods*, 743 F.3d 689, 697 (10th Cir. 2014) (recognizing "[t]he normal rule of statutory construction assumes that identical words used in different parts of the same act are intended to have the same meaning" (quoting *Sorenson v. Sec'y of Treasury*, 475 U.S. 851, 860 (1986))); A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 170 (2012) ("A word or phrase is presumed to bear the same meaning throughout a text[.]"). If Congress had intended § 1304(e) to provide standalone authorization to file a petition, unconstrained by § 1304(f)'s conditions, it would have said so.

The Court must read § 1303, § 1304(e), and § 1304(f) together as a whole. *See, e.g.*, *Nat'l Assn. of Home Builders v. Defs. of Wildlife*, 551 U.S. 664, 666 (2007) ("It is a fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." (citation omitted)). Congress provided that an STCJ defendant may file a habeas petition under § 1303 after sentencing, *see* § 1304(f)(1), and at that time may petition the court to immediately stay further detention by the tribe, *see* § 1304(e).

5

While the court may order the stay and release the defendant, *see id.*, it may not grant the habeas petition in full until the defendant has exhausted tribal court remedies, *see* § 1304(f)(2)(A). This construction allows all three provisions to work together harmoniously, whereas the R&R's construction creates conflict between them. *See* A. SCALIA & B. GARNER, READING LAW: THE INTERPRETATION OF LEGAL TEXTS 180 (2012) ("The provisions of a text should be interpreted in a way that renders them compatible, not contradictory…. [T]here can be no justification for needlessly rendering provisions in conflict if they can be interpreted harmoniously.").

With respect to STCJ defendants, § 1303 does not operate independently of § 1304(f)—an STCJ defendant may file a habeas petition under § 1303 only after being sentenced in tribal court. Congress is presumed to have "sa[id] … what it means and mean[t] … what it sa[id]," *Rotkiske v. Klemm*, 589 U.S. 8, 13–14 (2019) (quoting *Conn. Nat'l Bank v. Germain*, 503 U.S. 249, 254 (1992)), and the R&R errs in departing from the remedial scheme Congress enacted.

II.     **There Is No Exception to the Tribal Court Exhaustion Doctrine When a Non-Indian Challenges Tribal Jurisdiction.**

Even if Mr. Douglas could file a habeas corpus petition under § 1303 unconstrained by § 1304—that is, before being tried, convicted, and sentenced—he would still be required to exhaust his remedies in the MCN courts before obtaining any relief from this Court. *See*, *e.g.*, *Chegup v. Ute Indian Tribe of Uintah and Ouray Rsrv.*, 28 F.4th 1051, 1061 (10th Cir. 2022) ("[W]e apply the tribal exhaustion rule to § 1303 petitions[.]" (quotation marks omitted)). The tribal court exhaustion rule provides that a habeas petitioner must first exhaust his or her challenge to tribal jurisdiction in the tribal court system before seeking relief in federal court. *See id.* ("[P]rinciples of comity and the federal policy of promoting tribal self-government generally require that the plaintiff fully exhaust tribal remedies before proceeding in federal court." (quoting RESTATEMENT OF THE LAW OF AM. INDIANS § 59 cmt. A (AM. LAW INST., Proposed

6

Final Draft 2021))). He has not done so. While there are limited exceptions to the exhaustion rule, these "exceptions are applied narrowly" and "typically will not apply so long as tribal courts can 'make a colorable claim that they have jurisdiction.'" *Norton v. Ute Indian Tribe of the Uintah & Ouray Rsrv.*, 862 F.3d 1236, 1243 (10th Cir. 2017) (quoting *Thlopthlocco Tribal Town v. Stidham*, 762 F.3d 1226, 1239 (10th Cir. 2014)).

Mr. Douglas argues he is not required to exhaust the remedies available in the MCN Courts because the Nation's charges against him are "patently violative of express jurisdictional prohibitions." Dkt. 34 at 5 (quoting Pet'r's Resp. in Opp'n to Def.'s Mot. to Dismiss). But the Nation's exercise of jurisdiction can only be "patently violative of express jurisdictional prohibitions" if the crime with which he has been charged *patently* does not qualify as a "covered crime" under § 1304. The R&R makes no such finding, correctly declining to adjudicate whether Mr. Douglas committed a covered crime. It likewise would be inappropriate for this Court to do so—the fundamental purpose of exhaustion is to provide the tribal court the first opportunity to evaluate a challenge to its jurisdiction. *See Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856 (1985) ("[T]he forum whose jurisdiction is being challenged [should have] the first opportunity to evaluate the factual and legal bases for the challenge.").[3]

Nor does the R&R conclude the MCN Court does not have a "colorable" or "plausible" claim of jurisdiction, *Norton*, 862 F.2d at 1246, over the charges against Mr. Douglas. And for good reason. Congress expressly provided that jurisdiction over non-Indians extends to the crimes of "assault of Tribal justice personnel" and "obstruction of justice," 25 U.S.C.

---

[3] The R&R construes the Nation Officials' Motion to Dismiss as a factual challenge to the Court's jurisdiction and thus does not presume the truthfulness of the complaint's factual allegations. *See* Dkt. 34 at 3 (citation omitted). While the R&R briefly summarizes the factual background, it does not purport to resolve any disputed issues of fact.

§ 1304(a)(5). It cannot be seriously disputed that these covered crimes are firmly implicated here. Obstruction of justice is implicated because County officials allegedly attempted to confine MCN law enforcement officers in a secured area of the County jail, in order to prevent them from remanding a criminal suspect to the County's custody.[4] And assault of Tribal justice personnel is clearly implicated because Mr. Douglas allegedly used force against Lighthorse Deputy Chief Northcross while he was attempting to investigate the alleged obstruction of justice and to prevent any further obstruction of justice from taking place. *See* Dkt. 21 at 8–9 ("The Events of December 18, 2023.").[5]

Instead, the R&R points to *Oliphant*, 435 U.S. 191, and reasons that Mr. Douglas's challenge to tribal jurisdiction is "credible." Dkt. 34 at 7. *See also id.* at 5 ("For this express jurisdictional prohibition, Petitioner relies on the court's decision in *Oliphant* …, which holds that without congressional authorization, Indian tribes ordinarily lack jurisdiction to prosecute non-Indians."). This reasoning clearly errs in two respects. First, it turns the tribal court exhaustion doctrine upside down. Whether a *challenge* to tribal jurisdiction is "credible" is not the relevant legal standard. Rather, exhaustion is mandatory so long as the *assertion* of tribal jurisdiction is "colorable" or "plausible." If a "credible," non-frivolous challenge to tribal court jurisdiction were all that were required to avoid exhaustion, the rule would be a virtual nullity.

Second, the R&R's reasoning ignores the statute Congress wrote. The special criminal jurisdiction that Indian tribes exercise over non-Indians under § 1304, *by definition*, supplants

---

[4] "Obstruction of justice" charges include "any violation of the criminal law of the [Nation] … that involves interfering with the administration or due process of the laws of the [Nation], including any Tribal criminal proceeding or investigation of a crime." 25 U.S.C. § 1304(a)(9).
[5] "Assault of Tribal justice personnel" charges include any violation "of the criminal law of the [Nation] … that involves the use, attempted use, or threatened use of physical force against [a tribal law enforcement officer] … during, or because of, the performance or duties of that individual in … preventing, detecting, [or] investigating … a covered crime[.]" *Id.* § 1304(a)(1).

8

*Oliphant*. But that is Congress's prerogative. *See United States v. Lara*, 541 U.S. 193, 207 (2004) (stating that *Oliphant* and other precedent "are not determinative because Congress has enacted a new statute, relaxing restrictions on the bounds of the inherent tribal authority that the United States recognizes"). Congress made a deliberate choice to override *Oliphant* with respect to specific "covered crimes," including the charges against Mr. Douglas. The only question then is whether those charges are "patently violative" of the statute Congress wrote, which they plainly are not. *See supra* pp. 7–8. While the R&R acknowledges Mr. Douglas's fact-bound argument that his actions do not satisfy the requirements of § 1304(a)(5)(a) and (a)(5)(e), Dkt. 34 at 5–6, the R&R does not purport to find that the charges against him patently violate § 1304(a)–(c). The fact that the MCN courts, a jury, or a federal court reviewing his argument *might* ultimately conclude that the crime alleged is not a "covered crime" is a far cry from finding that the crime alleged is "patently violative of express jurisdictional prohibitions," *id.* at 7.[6]

Finally, the R&R's claim that, because Mr. Douglas's petition "is based on MCN's lack of jurisdiction to prosecute him, … [he] is not required to submit to additional tribal court proceedings[,]" *id.* at 6, disregards forty years of precedent requiring non-Indians to present such jurisdictional challenges to the tribal courts. The cases cited by the R&R, *id.*, do not support this proposition. To the contrary, *Texaco, Inc. v. Hale*, recognized that "whether tribal courts have jurisdiction over non-Indians in civil cases should be conducted in the first instance in the Tribal Court itself, unless one of the three [*National Farmers*] exceptions to the tribal exhaustion rule is

---

[6] Exhaustion is particularly appropriate in this case because it involves the construction of MCN law. *See Iowa Mut. Ins. Co. v. LaPlante*, 480 U.S. 9, 16 (1987) ("Adjudication of [reservation affairs] by any nontribal court also infringes upon tribal law-making authority, because tribal courts are best qualified to interpret and apply tribal law."). The MCN courts, moreover, have amply demonstrated their capacity to fully and faithfully evaluate questions surrounding their jurisdiction. *See* Nation Officials' Mot. to Dismiss and Br. in Supp. at 8–9.

applicable." 81 F.3d 934, 936 & n.2 (10th Cir. 1996) (citations omitted). And *In re Garvais* involved a non-Indian criminal defendant's challenge to a tribal prosecution before Congress modified the *Oliphant* rule by enacting § 1304. 402 F. Supp. 2d 1219, 1220 (E.D. Wash. 2004). There simply is no exception to the exhaustion requirement when a habeas petition challenges tribal jurisdiction. *See*, *e.g.*, *Adams v. Dodge*, 2022 WL 458394, at *2 (9th Cir. 2022) (exhaustion required for § 1303 challenge to tribal court's jurisdiction); *Danderson v. Page*, 2024 WL 3913051, at *1–2 (E.D. Okla. 2024) (Heil, J.) (same); *Gray v. Tulalip Tribal Court*, 2020 WL 4004491, at *2 (W.D. Wash. 2020) (same). Section 1304(f)(2)(A) makes this crystal clear— Congress forbade the federal courts from granting an STCJ defendant's petition unless "the applicant has exhausted the remedies available in the Tribal court system[.]" 25 U.S.C. § 1304(f)(2)(A).

Accordingly, even if Mr. Douglas could file a habeas corpus petition before he has been sentenced, which he cannot, he would be required to exhaust his tribal court remedies before obtaining any relief from this Court. *See, e.g.*, *Nat'l Farmers*, 471 U.S. at 856 ("[T]he orderly administration of justice in the federal court will be served by allowing a full record to be developed in the Tribal Court before either the merits or any question concerning appropriate relief is addressed."). The R&R would create an unprecedented exception to the tribal court exhaustion rule that would swallow the rule entirely. The Court should reject it.

## CONCLUSION

If the MCN courts determine there is jurisdiction over Mr. Douglas under 25 U.S.C. § 1304, and if he is tried, convicted, and sentenced, then he may challenge his detention by filing for a writ of habeas corpus. Until that time, the Court should dismiss the petition without prejudice or stay the petition until the statutory prerequisites of § 1304(f)(1) have been satisfied.

Dated: November 14, 2025               Respectfully submitted,

/s/ Philip H. Tinker
Philip H. Tinker, OBA No. 36498
K<small>ANJI</small> & K<small>ATZEN</small>, P.L.L.C.
12 N. Cheyenne Ave., Ste. 220
Tulsa, OK 74103
(206) 344-8100
ptinker@kanjikatzen.com

Riyaz A. Kanji
David A. Giampetroni
K<small>ANJI</small> & K<small>ATZEN</small>, P.L.L.C.
P.O. Box 3971
Ann Arbor, MI 48106
(734) 769-5400
rkanji@kanjikatzen.com
dgiampetroni@kanjikatzen.com

*Counsel for Respondents*

## CERTIFICATE OF SERVICE

I certify that on November 14, 2025, I electronically transmitted the above and foregoing document to the Clerk of the United States District Court for the Eastern District of Oklahoma using the ECF System for filing and transmittal of a Notice of Electronic Filing to:

Gentner Drummond, Attorney General,
    OFFICE OF THE ATTORNEY GENERAL, STATE OF OKLAHOMA

Amie Ely, First Assistant Attorney General,
    OFFICE OF THE ATTORNEY GENERAL, STATE OF OKLAHOMA

Garry M. Gaskins, II, Solicitor General
    OFFICE OF THE ATTORNEY GENERAL, STATE OF OKLAHOMA

William Flanagan, Assistant Solicitor General
    OFFICE OF THE ATTORNEY GENERAL, STATE OF OKLAHOMA

*/s/ Philip H. Tinker*