UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MATTHEW JOSEPH DOUGLAS,<br><br>*Petitioner,*<br><br>v.<br><br>GERI WISNER,<br>MATTHEW J. HALL, and<br>LISA OTIPOBY-HERBERT,<br><br>*Respondents.* | No. 24-CV-74-JFH-DES |

# PETITIONER'S RESPONSE IN OPPOSITION TO
# RESPONDENTS' OBJECTIONS TO REPORT AND RECOMMENDATION

Oklahoma Attorney General Gentner Drummond respectfully submits Petitioner's Response in Opposition to Respondents' Objections to the Report and Recommendation ("R&R") of United States Magistrate Judge D. Edward Snow.

Magistrate Judge Snow correctly concluded that Petitioner may seek habeas corpus relief under 25 U.S.C. § 1303 and that he is not required to exhaust tribal court remedies where the Muscogee (Creek) Nation's ("MCN" or "Nation") assertion of jurisdiction is patently violative of express jurisdictional prohibitions. Respondents' Objections fail to identify any legal error in the R&R and instead rehash arguments that the Magistrate Judge properly rejected. This Court should overrule the Objections and deny Respondents' Motion to Dismiss.

As background, 25 U.S.C. § 1304 authorizes Indian tribes to exercise "special Tribal criminal jurisdiction" ("STCJ") over non-Indians for specifically enumerated "covered crimes." Absent such congressional authorization, tribes lack criminal jurisdiction over non-Indians. *Oliphant v. Suquamish Indian Tribe*, 435 U.S. 191, 208 (1978). Section 1304 provides STCJ defendants with certain procedural protections, including the right to seek habeas corpus relief.

## I.     STANDARD OF REVIEW

A district court reviews objections to a magistrate judge's conclusions of law de novo. 28 U.S.C. § 636(b)(1)(C); *see also United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996). Respondents' Objections raise purely legal questions regarding the relationship between Sections 1303 and 1304 and the application of the exhaustion doctrine. As set forth below, Respondents' Objections fail to establish any error in the R&R's statutory analysis, and the Court should adopt its recommendations.

## II.     ARGUMENT

### A.     The R&R Correctly Interpreted the Relationship Between Sections 1303 and 1304.

Respondents argue that Section 1304(f) imposes a prerequisite of sentencing before any STCJ defendant may file a habeas petition under Section 1303. Dkt. 39 at 2–6. The R&R correctly rejected this argument. Dkt. 34 at 4.

The text of Section 1303 is unambiguous: "The privilege of the writ of habeas corpus shall be available to *any person*, in a court of the United States, to test the legality of his detention by order of an Indian tribe." 25 U.S.C. § 1303 (emphasis added). Congress used the broadest possible language—"any person"—without temporal limitation. Section 1303 has been in effect since 1968 and has always permitted pre-conviction habeas challenges. *See Dry v. CFR Ct. of Indian Offenses for Choctaw Nation*, 168 F.3d 1207, 1208 n.1 (10th Cir. 1999) (considering Section 1303 petition from defendant released on recognizance pending trial).

Section 1304(f) did not eliminate this longstanding remedy. Rather, Section 1304(f) creates an *additional* post-sentencing pathway that guarantees STCJ defendants access to habeas review after conviction—a right that might otherwise be questioned given the unique statutory framework of STCJ. The statute states that "[a]fter a defendant has been sentenced by a participating tribe, the defendant *may* file a petition for a writ of habeas corpus." 25 U.S.C. § 1304(f)(1) (emphasis added).

The word "may" is permissive, not restrictive. It confirms a right; it does not limit pre-existing rights under Section 1303.

Critically, Section 1304(e) expressly contemplates that STCJ defendants will file habeas petitions under Section 1303. That provision states: "A person who has filed a petition for a writ of habeas corpus in a court of the United States under section 1303 of this title may petition that court to stay further detention of that person by the participating tribe." *Id.* § 1304(e)(1). Congress thus recognized that STCJ defendants would seek relief under Section 1303—not solely under Section 1304(f)—and provided a mechanism for courts to stay their detention while such petitions are pending. If Section 1304(f) barred all pre-sentencing habeas petitions, Section 1304(e) would be superfluous and Section 1303 would be a nullity for STCJ defendants. *See* Dkt. 34 at 4 ("Respondents err by attempting to apply 25 U.S.C. §1304(f) in a manner that diminishes § 1304(e)."). Courts must interpret statutes to give effect to all provisions and avoid rendering any provision meaningless. *See TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). Had Congress intended Section 1304(f) to be the exclusive habeas mechanism for STCJ defendants, it would have said so explicitly. Instead, Section 1304(f) merely describes what happens "after a defendant has been sentenced"—it does not purport to eliminate pre-sentencing habeas relief under Section 1303.

Respondents' contrary reading would also create an irrational statutory scheme. Under their interpretation, an Indian defendant prosecuted by a tribe could immediately seek habeas relief under Section 1303, but a non-Indian defendant prosecuted under Section 1304 would be forced to endure a full trial, conviction, and sentencing before accessing federal court—even where tribal jurisdiction is patently lacking. Nothing in the statutory text or legislative history suggests Congress intended this perverse result, which runs counter to the presumption that Indian tribes do not have jurisdiction to prosecute non-Indians. *Oliphant*, 435 U.S. at 208.

Section 1304(g) reinforces this conclusion. That provision requires participating tribes to notify detained persons "of their rights and privileges under this section and under section 1303" at the time of detention. 25 U.S.C. § 1304(g). If Section 1303 habeas relief were unavailable until after sentencing, there would be no reason to notify pre-trial detainees of that right upon detention. Indeed, Congress's clear intent in enacting STCJ was to enhance protections for non-Indian defendants by requiring law-trained judges, appointed counsel, jury trials, and full application of constitutional rights. *See id.* § 1304(d). It would be anomalous to interpret Section 1304 as restricting the habeas rights that Section 1303 has provided since 1968.

The statutory structure thus reflects a coherent scheme: Section 1303 provides the longstanding general right to challenge tribal detention; Section 1304(e) confirms that right remains available to STCJ defendants and provides for stays pending resolution; and Section 1304(f) creates an additional guaranteed pathway after sentencing. Respondents' interpretation would collapse this structure, transforming Section 1304(f)'s grant of a post-sentencing right into a revocation of pre-existing rights under Section 1303—a result neither the text nor logic supports.

    **B. The R&R Correctly Applied the Exception to Tribal Exhaustion for Patently Violative Assertions of Jurisdiction.**

Even if Section 1304(f) applied to pre-sentencing petitions, the R&R correctly held that Petitioner need not exhaust tribal remedies because the MCN's assertion of jurisdiction is "patently violative of express jurisdictional prohibitions." Dkt. 34 at 7.

The tribal exhaustion doctrine is prudential, not jurisdictional. *Chegup v. Ute Indian Tribe*, 28 F.4th 1051, 1060 (10th Cir. 2022) (describing the doctrine as a "prudential rule, based on comity"). Exhaustion is excused where "the action is patently violative of express jurisdictional prohibitions." *Norton v. Ute Indian Tribe*, 862 F.3d 1236, 1243 (10th Cir. 2017) (citation omitted); *Nat'l Farmers Union Ins. Cos. v. Crow Tribe of Indians*, 471 U.S. 845, 856 n.21 (1985). This exception applies here.

The express jurisdictional prohibition is clear: "[I]ndian tribes do not have inherent jurisdiction to try and to punish non-Indians." *Oliphant*, 435 U.S. at 212. This rule remains in effect and was not overruled by Section 1304. *See United States v. Lara*, 541 U.S. 193, 205, 207 (2004) (recognizing Congress's power to modify *Oliphant* by statute, while *Oliphant* itself remains good law); *United States v. Cooley*, 593 U.S. 345, 349–50 (2021) (same). Section 1304 provides a narrow exception to *Oliphant* only for specifically enumerated "covered crimes." 25 U.S.C. § 1304(a)–(c). If no covered crime occurred, the tribe has no jurisdiction over a non-Indian defendant—period.

Here, the MCN lacks jurisdiction because no "covered crime" was committed. The alleged offense—battery against a Lighthorse officer—occurred entirely at the Okmulgee County Jail during a dispute over custody of a non-Indian arrestee who had been detained on *state* narcotics charges. The Lighthorse officers were not investigating or prosecuting any tribal crime; they were exercising state law enforcement authority pursuant to their cross-deputization agreement with the Grand River Dam Authority. Dkt. 21 at 3; Dkt. 25 at 11–12. Moreover, there was no *separate* obstruction of justice (or other crime the MCN might have authority to charge) in connection with an underlying "covered crime." Dkt. 34 at 6 ("Congress' grant of limited jurisdiction only extends to 'covered crimes,' none of which were committed before Petitioner was charged."); Dkt. 4 at 10.

The undisputed facts establish that the textual requirements necessary for MCN jurisdiction are not satisfied. The parties agree that the Lighthorse officers were exercising state law enforcement authority, the arrestee was non-Indian, the underlying charges were state narcotics offenses, and the entire incident occurred at a state county jail. Dkt. 21 at 3; Dkt. 25 at 11–12. There was, in short, no tribal crime being investigated and no tribal criminal proceeding being obstructed. The MCN cannot manufacture STCJ jurisdiction by characterizing a dispute over state law enforcement custody as interference with tribal justice. In addition, Section 1304's text requires a two-step inquiry: there must be a separate underlying "covered crime" being investigated or prosecuted, and the alleged assault or

obstruction must occur in connection with that predicate tribal proceeding. 25 U.S.C. § 1304(a)–(c). Here, no separate covered crime existed—the entire incident occurred during a single course of conduct at a state facility involving state law enforcement activities.

The consequences of MCN's interpretation underscore its error. Under their theory, any non-Indian who has any physical altercation with any tribal law enforcement officer—regardless of what that officer was doing at the time—would be subject to STCJ. A tribal officer moonlighting as a security guard, a tribal officer responding to a state-law traffic stop under a cross-deputization agreement, a tribal officer serving civil process—all would trigger tribal criminal jurisdiction over non-Indians under MCN's reading. Under Section 1304's two-step framework, none of these scenarios would involve a predicate covered crime—the officers would not be engaged in tribal justice functions, and no underlying tribal proceeding would exist. That interpretation would effectively nullify *Oliphant* for a broad category of conduct Congress never intended to reach when it created narrow, enumerated exceptions for specific covered crimes.

Respondents argue that the MCN has a "colorable" or "plausible" claim of jurisdiction. Dkt. 39 at 7–8. Respondents conflate two distinct legal standards that answer different questions. The "colorable claim" standard determines when exhaustion is required—tribal courts get first crack at jurisdictional questions when they have a non-frivolous claim. *See Thlopthlocco Tribal Town v. Stidham*, 762 F.3d 1226, 1240 (10th Cir. 2014). The "patently violative" standard determines when an exception to exhaustion applies—it asks whether the assertion of jurisdiction transgresses "express jurisdictional prohibitions." *Norton*, 862 F.3d at 1243. These standards are not opposite answers to the same question. A jurisdictional claim can be non-frivolous—in that competent lawyers could construct reasonable arguments—while still being patently foreclosed by express statutory text. The word "express" is critical: the exception turns on whether explicit textual limits exist and plainly apply, not on whether the tribe's overall theory is weak or strong.

That standard is satisfied here. *Oliphant* established an express prohibition: tribes lack "inherent jurisdiction to try and to punish non-Indians." 435 U.S. at 212. Section 1304 creates a narrow, textually defined exception for enumerated "covered crimes." 25 U.S.C. § 1304(a)–(c). The question is not whether the MCN's lawyers have made a creative argument—it is whether the charged conduct falls within the express terms of Section 1304's "covered crimes." It does not. The entire incident arose from state law enforcement activity: Lighthorse officers exercising state authority under a cross-deputization agreement, transporting a non-Indian arrestee on state narcotics charges to a state county jail. No tribal crime was being investigated; no tribal proceeding was being obstructed. The two-step requirement thus forecloses MCN's claim: absent a separate covered crime serving as a predicate, Section 1304's narrow grant of jurisdiction does not apply. Section 1304's text simply does not reach these facts, and *Oliphant*'s express prohibition therefore applies. That is the definition of "patently violative of express jurisdictional prohibitions."

### C. Respondents Mischaracterize the R&R's Reasoning.

Respondents accuse the R&R of holding that any challenge to tribal jurisdiction exempts a petitioner from exhaustion. Dkt. 39 at 10. That mischaracterizes the R&R's holding. The R&R did not create a categorical rule exempting all jurisdictional challenges from exhaustion. Rather, it applied the well-established exception for assertions of jurisdiction that are "patently violative of express jurisdictional prohibitions." Dkt. 34 at 5–7. The R&R correctly recognized that where—as here—the tribe's criminal jurisdiction over a non-Indian is expressly prohibited by *Oliphant* and no statutory exception applies, requiring exhaustion would serve no purpose other than delay.

The cases Respondents cite in support of exhaustion, Dkt. 39 at 9–10, are distinguishable. In *Norton*, the Tenth Circuit required exhaustion for a civil trespass claim because the tribal court had a "colorable claim" to jurisdiction under *Montana v. United States*, 450 U.S. 544 (1981), where the conduct occurred on tribal land and implicated the tribe's political integrity. 862 F.3d at 1246. Here, by contrast,

the alleged conduct occurred at a state county jail, involved state law enforcement activities, and lacked any connection to a tribal crime or tribal proceeding. There is no colorable claim of tribal jurisdiction because the statutory text simply does not reach these facts.

Similarly, *Danderson v. Page*, 2024 WL 3913051 (E.D. Okla. Aug. 20, 2024), is inapposite. There, the petitioner conceded he had "not exhausted his habeas claims in the Cherokee Nation tribal courts," *id.* at *2, and never argued that any exception to exhaustion applied. The court accordingly had no occasion to analyze the "patently violative" exception. Moreover, *Danderson* did not involve an STCJ prosecution under Section 1304 at all—it was a standard tribal court prosecution under Section 1303. *Adams v. Dodge*, 2022 WL 458394 (9th Cir. Feb. 15, 2022), is likewise distinguishable. There, the petitioner argued the tribal court lacked jurisdiction because Washington state had assumed exclusive criminal jurisdiction under Public Law 280—a territorial concurrent-jurisdiction question that the court found was not "plainly" resolved against tribal jurisdiction. *Id.* at *3. By contrast, Petitioner's challenge here invokes *Oliphant*'s express prohibition on tribal criminal jurisdiction over non-Indians—a categorical bar that applies unless Congress has specifically authorized jurisdiction over a "covered crime." Neither case addresses the situation presented here: a tribe prosecuting a non-Indian under STCJ for conduct that patently does not constitute a covered crime.

### III.  CONCLUSION

The R&R correctly concluded that Petitioner may seek habeas corpus relief under 25 U.S.C. § 1303 and is not required to exhaust tribal court remedies where the MCN's assertion of jurisdiction is patently violative of *Oliphant*'s express prohibition on tribal prosecution of non-Indians. Respondents' Objections present no basis to depart from the Magistrate Judge's well-reasoned analysis. Accordingly, this Court should overrule the Objections, deny Respondents' Motion to Dismiss, and grant Petitioner's Petition for Writ of Habeas Corpus.

        Respectfully submitted,

        *s/ Garry M. Gaskins, II*
        GENTNER DRUMMOND, OBA #16645
          *Attorney General*
        AMIE N. ELY, OBA #35840
          *First Assistant Attorney General*
        GARRY M. GASKINS, II, OBA #20212
          *Solicitor General*
        WILL FLANAGAN, OBA #35110
          *Assistant Solicitor General*

        OFFICE OF THE ATTORNEY GENERAL
        STATE OF OKLAHOMA
        313 NE 21st Street
        Oklahoma City, OK 73105
        (405) 521-3921
        (405) 522-4534 (fax)
        garry.gaskins@oag.ok.gov

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 15th day of December, 2025, I electronically transmitted the foregoing document to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the ECF registrants with entries of appearance filed of record.

        s/ *Garry M. Gaskins, II*
        Garry M. Gaskins, II
          *Solicitor General*